22 N.J. Super. 452 (1952)
92 A.2d 100
JOHN ANTHONY AND JANE G. ANTHONY, INDIVIDUALLY AND AS PARTNERS TRADING AS TWIN BAR, AND GLOUCESTER CITY LICENSED BEVERAGE ASSOCIATION, AN UNINCORPORATED ASSOCIATION, PLAINTIFFS-APPELLANTS,
v.
PHILIP V. REA, MAYOR OF THE CITY OF GLOUCESTER CITY, NEW JERSEY; MESSRS. ROBERT D. BOBO, WILLIAM BOWE, BENJAMIN B. FOSTER, WILLIAM FRITZ, JOHN LINCOLN, FRANK McQUAID, JOHN OVERNACK, ROBERT LUKER AND THOMAS SULLIVAN, MEMBERS OF THE COMMON COUNCIL OF GLOUCESTER CITY, CAMDEN COUNTY, NEW JERSEY; MARION T. CONNELLY, ACTING CITY CLERK OF GLOUCESTER CITY, CAMDEN COUNTY, NEW JERSEY; AND FRANK J. SUTTILL, COUNTY CLERK OF CAMDEN COUNTY, NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 3, 1952.
*454 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. Samuel H. Nelson argued the cause for plaintiffs-appellants (Mr. Sidney Simandl, attorney).
Mr. William J. Shepp appeared for respondents Philip V. Rea, Mayor, and the Common Council of the City of Gloucester City (Mr. William E. Hughes, attorney).
*455 The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On May 1, 1952, a petition was presented to the governing body of the City of Gloucester City requesting a referendum on the question "Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?"; and on June 5, 1952, the Common Council of the City of Gloucester City passed a resolution directing the County Clerk of Camden County to print such question upon the official general election ballot to be used on November 4, 1952. The plaintiffs instituted suit in lieu of prerogative writ in the Law Division of the Superior Court for Camden County, seeking an order declaring this petition and resolution pertaining to the referendum on the public question illegal and void, and for an order restraining the County Clerk of Camden County from printing the question upon the ballot. The plaintiffs appeal from a judgment entered denying the restraint and dismissing the complaint.
The proceedings which the plaintiff sought to review were taken under R.S. 33:1-47 (as amended L. 1949, c. 296, § 4), which in pertinent part provides as follows:
"Whenever a petition signed by at least fifteen per centum (15%) of the qualified electors of any municipality as evidenced by the total number of votes cast for members of the General Assembly, at the then next preceding general election held for the election of all of the members of the General Assembly, in such municipality, shall be presented to the governing board or body thereof, requesting a referendum on the question hereinafter stated, such governing board or body shall adopt forthwith a resolution directing the clerk of the county in which such municipality is situated to print, pursuant to Title 19, Elections, hereinafter referred to as the `general election law,' upon the official ballot to be used in such municipality at the next ensuing general election, a question to read: `Shall the sale of alcoholic beverages be permitted on Sundays in this municipality?' * * * the county clerk * * * shall cause such question to be printed in an appropriate place on the ballot to be used in such municipality at the next ensuing general election, pursuant to the general election law and thereupon all proceedings with respect to the referendum on such question shall be subject to and governed by the general election law as in other cases of the submission of public questions to the electorate." (Italics ours.)
*456 Plaintiffs argue that the inclusion in R.S. 33:1-47 of the language which we have italicized makes the act unconstitutional because it incorporates provisions of another statute by mere reference thereto, in violation of Art. IV, Sec. VII, Par. 5 of our Constitution, which provides: "* * * No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act." A statute which adopts by mere reference the provisions of a prior act, in order to create substantive rights or duties, is within the prohibition of this constitutional provision; but a statute which adopts by reference only the forms of process and procedure necessary to accomplish the purpose of the act, is not within such prohibition. If the statute embody a complete and perfect act of legislation in itself, it may provide for ancillary proceedings to accomplish the purposes expressed in the act by a reference to general laws on the subject, without violating this constitutional provision. Jersey City v. Martin, 127 N.J.L. 18 (E. & A. 1941); Campbell v. Board of Pharmacy of New Jersey, 45 N.J.L. 241 (Sup. Ct. 1883), affirmed 47 N.J.L. 347 (E. & A. 1885); 1 Sutherland, Statutory Construction, § 1925 (3rd ed. 1943). The plaintiffs recognize this distinction, but contend that the use of the words "subject to and governed by" makes it clear that the intention was to adopt not only the procedural provisions of the general election law, but also the substantive provisions thereof. This argument wholly disregards the fact that under this statute it is the "proceedings with respect to the referendum on such question" which are made "subject to and governed by the general election law." It is clear from the language of this statute that the reference to the general election law merely provides for ancillary proceedings to accomplish the purpose expressed in the act; and that the act adopts by reference only the forms of process and procedure contained in the *457 general election law which are necessary to accomplish its purpose.
The next contention is that R.S. 33:1-47 is unconstitutional because the title of the act (L. 1949, c. 296) does not state the object of the enactment as required by Art. IV, Sec. VII, Par. 4 of our Constitution. The title reads as follows: "An Act concerning municipal referenda in connection with the sales of alcoholic beverages, and amending sections 33:1-44, 33:1-45, 33:1-46, 33:1-47 and 33:1-47.1 and supplementing chapter one of Title 33 of the Revised Statutes." The argument advanced in support depends entirely upon the premise that R.S. 33:1-47 adopts by reference all the substantive provisions of the general election law. We have already concluded that this premise is false.
The referendum petition is said to be invalid because it is unverified. It is argued that under the general election law petitions for the submission of public questions to the electorate must be verified, and such requirement applies to this petition. Assuming that the general election law contains such a requirement, it does not apply to petitions under R.S. 33:1-47. This section provides that the ballots shall be printed pursuant to the general election law and that all proceedings thereafter shall be subject to and governed by the general election law; but the requirements of the section concerning proceedings prior to the printing of the ballots are in no way connected with or affected by provisions of the general election law. Since the section contains no requirement that the petitions be verified, the inference is that the Legislature intended no such requirement. Cf. In re City of Passaic, 94 N.J.L. 384 (Sup. Ct. 1920).
Last, it is contended that the referendum petition is void because an insufficient number of voters signed it. Under the act, the petition must be signed by at least 15% of the qualified electors of the municipality "as evidenced by the total number of votes cast for members of the General *458 Assembly, at the then next preceding general election held for the election of all the members of the General Assembly." At such preceding general election in the City of Gloucester City there were 6,957 registered voters, of whom 4,288 actually voted. Three members of the General Assembly were to be elected at this election, and for all seven candidates for such office a total vote of 12,061 was cast. There were 1,383 valid signatures on the petition, which number exceeded 30% of the total number of registered voters who voted at such preceding election, and exceeded 19% of the total number of registered voters for such election.
The plaintiffs argue that the act requires that the petition be signed by qualified electors of the municipality, equal in number to 15% of all the votes cast for all the candidates for the office of member of the General Assembly at the preceding election, which in this case would be 1,809. If this contention is correct, the petition did not contain the required number of valid signatures. We think the statutory language requires signers equal in number to 15% of the total votes cast for all the candidates for the office of member of the General Assembly, divided by the total number of such members which are to be filled at such election, which in this case would be 15% of 4,021 or 603.
Strong support for our interpretation can be found in Schwartz v. Wachlin, 89 N.J.L. 39 (Sup. Ct. 1916), which so interpreted the following language of L. 1911, c. 221, § 18 (the Walsh Act): "provided, however, that the votes cast in favor of the adoption of this act is equal to at least thirty per centum of the votes cast for members of the General Assembly at the last general election immediately preceding the submission of this act." Moreover, if the interpretation urged by plaintiffs were adopted, it could lead to an absurdity, for if all the registered voters in a municipality in Essex County (which elects 12 members of the General Assembly) voted at such election, and all voted for 12 candidates, the number of signers to a petition which *459 would be required under R.S. 37:1-47 would be 180% of all the registered voters for such election in such municipality.
The judgment is affirmed.